ROBERTSON, Justice,
for the court:
I.
This prosecution is a garden-variety single that the State seeks to stretch into a triple. It seems certain the State has secured an affirmable conviction that Bessie Marie Clayton sold a certain quantity of *1020 cocaine to Essau Shaw on December 12, 1988, for $50.00. What is more problematical is whether, separate and apart, Clayton possessed an additional quantity of cocaine with intent to sell and whether she engaged in a criminal conspiracy with her sister, Carolyn Clayton, to sell cocaine.
The jury convicted Clayton of all three, but the Circuit Court, in practical effect, limited the state’s stacking by ordering that Clayton serve time only on the sale of cocaine conviction. We reverse the other two outright and hold the State to its single.
II.
A.
Bessie Marie Clayton was born on August 2, 1965, and long before December of 1988, the Mississippi Bureau of Narcotics (MBN) had suspected she was trafficking in illegal controlled substances in Lafayette County, Mississippi. Forty-four year old Essau Shaw, a convicted felon, a known addict, and an MBN confidential informant, reported that he had purchased controlled substances from Clayton and, not having the money to pay, had left a pair of boots as collateral. MBN Lieutenant Randy Cor-ban, who was in charge of the Oxford office, asked Shaw to set up a “controlled buy”[1] from Clayton at a trailer park, where it appears she lived with her sister.
Shaw returned to Clayton and asked her if she could sell more drugs. Clayton responded she could “fix him up with a good fifty.”[2] Shaw then proceeded to the trailer park, with Lt. Corban watching from a distance and maintaining surveillance. Shaw says Clayton came out and got into his car and once in the car, pulled the cocaine from her brassiere. He gave Clayton fifty dollars for the drugs. Shaw said Clayton held approximately $400-$500 worth of cocaine similarly packaged inside a clear bag inside her blouse. Corban and Shaw met at MBN Headquarters in Oxford and Shaw gave Corban the purchased drugs. In turn, Corban paid Shaw for his services. Based upon the information given and gathered, Corban obtained a search warrant for the trailer.
Armed with the warrant, Corban, along with other law enforcement officials, proceeded to the trailer and knocked on the door. A woman answered, “Who is it?” When Corban announced his identity he heard movement inside. Corban then opened the door and entered the trailer and immediately encountered Carolyn Clayton, Bessie’s sister, who began shouting what was occurring. Bessie came up the trailer’s hall from a rear bathroom and entered a small bedroom where police found an older woman and a female child in bed.
In the course of their search, officers found $849.00 in Clayton’s pockets of which $75.00 was identified as MBN money. Carolyn Clayton claimed all the money was hers. Officers also found several pieces of magazine paper in the living room area containing white residue. The search netted as well a broken test tube with white powdery residue and a small amount of marijuana from Carolyn Clayton’s purse. Finally, white powder was found on the bathroom floor. Corban stated when he entered the bathroom the toilet was running and had obviously been used. When tested by the state crime laboratory, the powder proved to be cocaine.
B.
On September 21,1989, the grand jury of Lafayette County returned a three-count indictment charging that on December 12, 1988, Bessie Marie Clayton:
(a) Sold cocaine to an MBN confidential informant for the sum of $50.00, Miss. *1021 Code Ann. § 41-29-115(A)(a)(4) and -139(a)(1) (1972) and (Supp.1988);
(b) Possessed cocaine with intent to sell, Miss.Code Ann. § 41-29-115(A)(a)(4) and -139(a) (Supp.1988); and
(c) Prior thereto and on or about December 12, 1988, engaged in a conspiracy with Carolyn Clayton to sell cocaine, Miss.Code Ann. § 97-1-1 (1972), and 41-29-115(A)(a)(4) and -139(a)(1).[3]
In due course, the jury found Clayton guilty as charged on all three counts in the indictment. On Count I, sale of cocaine, the Circuit Court sentenced Clayton to a term of twenty years imprisonment in the custody of the Mississippi Department of Corrections, with the final eight years of that sentence suspended. On Count II, possession of cocaine with intent to distribute, the Court sentenced Clayton to eight years imprisonment, this sentence to run consecutively with that imposed in Count I but then proceeded to suspend service of all eight years of the sentence. On Count III, the conspiracy count, the Circuit Court imposed a five year sentence, with this sentence to be served concurrently with the sentence for sale of cocaine.
Clayton now appeals and challenges all three convictions on their merits.
III.
Clayton first challenges the legal sufficiency of the evidence to support a conviction that she sold cocaine to Essau Shaw on December 12, 1988. Her argument in substance is that the conviction rests upon Shaw’s testimony and that Shaw is a convicted felon himself, an admitted drug addict, and a general reprobate and hence, unworthy of belief. The point need not detain us. Shaw testified in open court, and his unsavory background was thoroughly explored. Under our system, the jury has the responsibility of assessing his credibility. Given our limited and familiar scope of review, we may only affirm on this point. See, e.g., Doby v. State, 557 So.2d 533, 535-36 (Miss.1990); Hall v. State, 546 So.2d 673, 677-78 (Miss.1989); Turner v. State, 415 So.2d 689, 693 (Miss.1982).
IV.
Clayton’s conviction on Count II— possession of cocaine with intent to distribute—is more problematical. Of course, she possessed cocaine with intent to distribute a few moments prior to her sale to Shaw on December 12, 1988, but we trust all would concede that any such offense was merged into the subsequent sale to Shaw. Shaw said Clayton had an additional quantity of the substance sold to him and, following the sale, that Clayton returned it to its place of security inside her bra. The problem here is that there has been no chemical analysis adequate to show that the substance was an illegal controlled substance.
On Count II, the prosecution below and here has proceeded on the premise that the cocaine residues found in the trailer were, in fact, the controlled substances Clayton allegedly had possessed with intent to distribute. It is true that upon searching the trailer, MBN Agents found several pieces of paper saturated with cocaine residue. They also found a test tube containing cocaine residue, but it was inside Carolyn Clayton’s purse. A white powdery substance was found on the bathroom floor. The problem with all of this is that Carolyn Clayton owned the trailer. Accepting the prosecution’s premise that Bessie Marie Clayton was a joint occupant, the prosecution is far short of proof of Bessie Marie Clayton’s actual or constructive possession.
Keys v. State, 478 So.2d 266 (Miss.1985), spoke to the point. There, we held:
The state is not required to prove actual physical possession. The positive law of this state declares it unlawful for one to have constructive possession of an illegal controlled substance with intent to sell. An item is within one’s constructive possession when it is subject to his dominion or control.
*1022 Keys, 478 So.2d at 268. Powell v. State, 355 So.2d 1378, 1379 (Miss.1978), is the other side of the coin. Powell holds “... there is no rigid rule that can be stated to govern every conceivable case, but each case must be decided upon its peculiar facts.” Powell further noted that
[t]he correct rule in this jurisdiction is that one in possession of premises upon which contraband is found is presumed to be in constructive possession of the articles, but the presumption is rebut-table. We have held that where contraband is found upon premises not in the exclusive control and possession of the accused, additional incriminating facts must connect the accused with the contraband. Where the premises upon which contraband is found is not in the exclusive possession of the accused, the accused is entitled to acquittal, absent some competent evidence connecting him with the contraband. Sisk v. State, 290 So.2d 608 (Miss.1974).
Powell, 355 So.2d at 1379. Today’s case is like unto Powell. See also, Arnett v. State, 532 So.2d 1003 (Miss.1988); Guilbeau v. State, 502 So.2d 639 (Miss.1987); Kinzey v. State, 498 So.2d 814 (Miss.1986).
It should be borne in mind that the quantity of cocaine Clayton is said to have possessed with intent to distribute is a mere trace, or, perhaps, traces. These quantities are insufficient that the jury may infer an intent to distribute. Stringer v. State, 557 So.2d 796, 797 (Miss.1990); Coyne v. State, 484 So.2d 1018, 1021 (Miss.1986); Bryant v. State, 427 So.2d 131 (Miss.1983).
The flaw in the prosecution is more basic. We find the evidence insufficient that a jury may reasonably have found beyond a reasonable doubt that Bessie Marie Clayton had actual or constructive possession of these traces of cocaine at all. While arguably this evidence may have been sufficient to convict Carolyn Clayton, we find it too speculative to undergird a conviction of Bessie Marie Clayton of possession of cocaine with intent to distribute, and we reverse and render on this point. See, e.g., Burnham v. State, 467 So.2d 946, 947-48 (Miss.1985); Sisk v. State, 290 So.2d 608, 610 (Miss.1974).[4]
V.
Lastly, Clayton challenges her conspiracy conviction. She is again on solid ground.
The essence of a criminal conspiracy is two or more persons combining and agreeing to accomplish an unlawful purpose or to accomplish a lawful purpose unlawfully. Miss.Code Ann. § 97-1-1 (Supp.1990); Taylor v. State, 536 So.2d 1326, 1328 (Miss.1988); Griffin v. State, 480 So.2d 1124, 1126 (Miss.1985); Norman v. State, 381 So.2d 1024, 1028 (Miss.1980). A criminal conspiracy is complete upon the combination, and the law does not require proof of an overt act in pursuance thereof. Ford v. State, 546 So.2d 686, 688 (Miss.1989). The agreement need not be formal or express but may be inferred from the circumstances, particularly from declarations, acts, and conduct of the alleged conspirators. Nixon v. State, 533 So.2d 1078, 1092 (Miss.1987); Barnes v. State, 493 So.2d 313, 315 (Miss.1986); McCray v. State, 486 So.2d 1247, 1251 (Miss.1986).
Given these familiar standards, we find that the record presents no evidence from which a jury may have found beyond a reasonable doubt that Bessie Marie Clayton conspired with her sister, Carolyn, to sell cocaine. The only evidence regarding Carolyn Clayton shows she was present at the time of the search and screamed when the police entered the trailer. Additionally, she claimed the money found during the search was hers. Finally, agents found a *1023 broken test tube with cocaine residue in her purse. None of this establishes an agreement nor does it infer or imply an agreement. Evidence that Clayton sold cocaine and that her sister may have possessed cocaine for personal use leaves too much to the realm of speculation and conjecture. McCray v. State, 486 So.2d at 1251-52; McDonald v. State, 454 So.2d 488, 491-95 (Miss.1984). It is true Carolyn Clayton made claim to all of the money seized in the search, including the $50.00 Shaw gave to Bessie Marie, but at most, this makes her an accessory after the fact.
CONVICTION OF SALE OF COCAINE AND SENTENCE OF TWENTY YEARS IMPRISONMENT WITH EIGHT YEARS SUSPENDED, AFFIRMED; CONVICTION OF POSSESSION OF COCAINE WITH INTENT TO DISTRIBUTE REVERSED AND RENDERED; CONVICTION OF CONSPIRACY TO SELL COCAINE REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.

. Corban testified that a controlled buy involved the confidential informant’s making the actual purchase with the MBN agent providing surveillance. To assure that any drugs presented by a confidential informant after a controlled buy are the fruits of a drug purchase, officers search the confidential informant prior to the transaction. Informants are also provided with a tape recorder and buy money.

. Pursuant to Shaw’s revisit with Clayton, the record reflects Lt. Corban also gave Shaw twenty-five dollars so that Shaw could obtain his boots.

. Carolyn Clayton was charged as well in Counts II and III of the indictment. The charges against Carolyn Clayton were severed and the present appeal concerns only the prosecution of Bessie Marie Clayton.

. Testimony before us suggests, moments before MBN Agents entered the trailer, Clayton may have flushed down the toilet a substance that may have been cocaine. As the issue has not been briefed or argued, we do not consider whether a jury, on similar proof, may infer a guilty mind and find possession and/or possession with intent to distribute. Cf. Jordan v. McKenna, 573 So.2d 1371, 1373 (Miss.1990); Harveston v. State, 493 So.2d 365, 371 (Miss.1986); Pannell v. State, 455 So.2d 785, 788-89 (Miss.1984); Quarles v. State, 199 So.2d 58 (Miss.1967).