# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-KA-00327-SCT

*IVAN RUSSELL MCCLELLAN*

*v.*

*STATE OF MISSISSIPPI*


DATE OF JUDGMENT:    02/26/2009
TRIAL JUDGE:      HON. JAMES T. KITCHENS, JR.
COURT FROM WHICH APPEALED: LOWNDES COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:  OFFICE OF INDIGENT APPEALS
             BY: GEORGE T. HOLMES
             LESLIE S. LEE
             GARY GOODWIN
ATTORNEYS FOR APPELLEE:   OFFICE OF THE ATTORNEY GENERAL
             BY: LADONNA C. HOLLAND
DISTRICT ATTORNEY:    FORREST ALLGOOD
NATURE OF THE CASE:    CRIMINAL- FELONY
DISPOSITION:      AFFIRMED - 03/25/2010
MOTION FOR REHEARING FILED:
MANDATE ISSUED:


**BEFORE CARLSON, P.J., RANDOLPH AND KITCHENS, JJ.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1. Following a jury trial in Lowndes County Circuit Court, Ivan Russell McClellan was convicted of possessing two methamphetamine precursors and possessing 250 dosage units of pseudoephedrine under Mississippi Code Sections 41-29-313(1)(a) and 41-29-313(2)(c), respectively. McClellan was sentenced as a habitual offender under Mississippi Code Section 99-19-81 to serve thirty years in the custody of the Mississippi Department of

Corrections for the precursor conviction and five years for the pseudoephedrine conviction, those sentences to run concurrently.

**FACTS**

¶2. On December 5, 2007, Officer John Pevey of the Columbus Police Department responded to a call from dispatch informing him that a white male and a white female had just made large purchases of pseudoephedrine at Fred's Dollar Store in Columbus, Mississippi. At trial, Pevey explained that pseudoephedrine is the main ingredient used for the manufacture of methamphetamine. A Fred's sales clerk told police that the man and woman each had purchased four boxes of pseudoephedrine, for a total of eight boxes. The sales clerk also related to police that the pair had left the store in an older-model blue automobile, and that the vehicle was last seen traveling east on the Highway 82 bypass.

¶3. Pevey set out to find this car while Mississippi Bureau of Narcotics Agent Eddie Hawkins proceeded to Fred's Dollar Store to investigate the purchase further. Hawkins learned from the Fred's sales clerk that the couple had left in an older-model blue Mustang with an Alabama tag, and that the individuals had used identification to purchase the pseudoephedrine which identified them as Ivan McClellan and Katina McGee. Hawkins relayed this information to Pevey via radio.

¶4. Pevey subsequently located the Mustang at Dutch Village Family Pharmacy. Pevey parked across the street to maintain surveillance of McClellan and McGee, and he continued to follow them after they left Dutch Village and proceeded to Dollar General Store, where the suspects learned the store did not carry pseudoephedrine products. As Pevey continued to follow the suspects, Hawkins went into the Dutch Village Family Pharmacy and learned

that the suspects had purchased more pseudoephedrine. Again, Agent Hawkins relayed this information to Officer Pevey via radio.

¶5.     From Dollar General, Pevey followed McClellan and McGee onto Highway 50 and ultimately stopped them on Highway 182 between New Hope Road and Mount Vernon Road. Pevey testified that, after he had verified the identities of the occupants of the vehicle as Ivan Russell McClellan and Katina McGee, he obtained consent to search the vehicle.[1] Upon searching the car, Officer Pevey discovered a total of 308 pseudoephedrine pills, three cans of starter fluid, three cans of granular drain opener, a pack of unopened lithium batteries, and a plastic bag with Fred's Dollar Store insignia on it.[2] Also found were a bottle of isopropyl alcohol and another box of pseudoephedrine pills in a suitcase inside the car. At trial, Agent Hawkins testified that each of these items is a known methamphetamine precursor, and he explained how each of these products is used in manufacturing methamphetamine.

¶6.     McClellan and McGee immediately were arrested, and, in due course, McClellan was charged in a two-count indictment. The first count charged a violation of the provision of the Mississippi Code that prohibits the simultaneous possession of two or more chemicals appearing on a list of identified precursor materials used in the manufacture of methamphetamine under circumstances demonstrating that the possessor knew (or reasonably should have known) that the materials would be used illegally to manufacture

---

[1] From the record, it cannot be determined whether the consent to search McClellan's car was verbal or written in form.

[2] Agent Hawkins testified that "sodium hydroxide is your everyday household Drano, or Red Devil Lye," and that "starting fluid has ether in it."

3

methamphetamine. Miss. Code Ann. § 41-29-313(1)(a) (Rev. 2009). The materials named in the indictment were lithium (batteries), sodium hydroxide (granular drain opener), ether (starter fluid), and isopropyl alcohol. The second count charged a violation of the provision of the Mississippi Code that prohibits the possession of 250 dosage units of pseudoephedrine, knowing, or under circumstances where one reasonably should know, that the pseudoephedrine will be used to manufacture a controlled substance unlawfully. Miss. Code Ann. § 41-29-313(2)(c)(I) (Rev. 2009). McClellan was convicted on both counts.

## ISSUES

¶7.     McClellan raises four issues on appeal: (1) whether there was an illegal search, requiring exclusion of (A) the items found in the car and (B) his confession to police, (2) whether the verdict is supported by the weight of the evidence, (3) whether the trial court allowed improper impeachment evidence, and (4) whether merger prohibited prosecution for both possession of precursors and possession of more than 250 dosage units of pseudoephedrine.

## DISCUSSION

*1.A. Motion to Suppress the Seized Items*

¶8.     McClellan moved to exclude the items seized in the search of his vehicle, but the motion was overruled. The trial judge held that the stop of McClellan's vehicle was valid and that it was made with sufficient probable cause for an investigatory stop. McClellan claims that the officers lacked reasonable suspicion to make an investigatory stop because the initial description of the suspect vehicle by police dispatch was vague.

4

¶9. A police officer may conduct an investigatory stop if he or she has "reasonable suspicion, grounded in specific and articulable facts, that a person [the officer encounters] was involved in or is wanted in connection with a completed felony . . . or 'some objective manifestation that the person stopped is, or is about to be engaged in criminal activity.'" *Williamson v. State*, 876 So. 2d 353, 355 (Miss. 2004) (quoting *Floyd v. State*, 500 So. 2d 989, 992 (Miss. 1986)). Reasonable suspicion may be based on the officer's personal observations or an informant's tip, as long as the tip bears an indicium of reliability. *Id.* (citing *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 118 (Miss. 1999)). In *Williamson*, police received information from pharmacy employees that two white males had purchased large quantities of pseudoephedrine from two different stores. *Id.* at 354. One of the tipsters told police that the two white men had left the store in a white van, and he gave police the license plate number and the direction in which he had seen the van traveling. *Id.* A police officer located the van and followed it to a Fred's Dollar Store, where he obtained consent to search the vehicle. *Id.* In the *Williamson* case, this Court concluded that the information provided by the pharmacy employee, "the color of the van, the number and race of the occupants, the license plate number and the direction of travel, including the name of the street," provided a sufficient basis for the officer's reasonable suspicion to stop the vehicle. *Id.* at 356.

¶10. While in this case the initial description may have been somewhat vague, police were able to accumulate many more details about the individuals, their pseudoephedrine purchases, and the vehicle in which they were traveling before officers made the investigatory stop. Agent Hawkins investigated at both Fred's Dollar Store and Dollar

5

General Store soon after the suspects had driven away from each. Hawkins relayed to Officer Pevey the information he had obtained, and Pevey subsequently made the investigatory stop after reasoning that he had enough information, or probable cause, to do so. Thus, the trial court did not err in denying McClellan's motion to suppress the fruits of the vehicle search.

*1.B. Motion to Suppress the Confession*

¶11.    After McClellan was arrested and Mirandized pursuant to ***Miranda v. Arizona***, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), he gave a statement to police admitting that he was "going to take these items and make methamphetamine." He added, "The female that was with me was helping me get some of the items needed. . . . I guess she was going to help me cook. . . . I was going to use the finish [sic] product myself and Katina was going to use the product also." At trial, McClellan moved to suppress this statement, claiming that it was the product of an illegal arrest, but the motion was denied.

¶12.    "To effect arrest for a felony, either with or without a warrant, a police officer must have reasonable cause to believe a felony has been committed, and reasonable cause to believe that the person proposed to be arrested is the one who committed it." ***Jones v. State***, 841 So. 2d 115, 125 (Miss. 2003). As established above, Officer Pevey had probable cause to stop McClellan and was given consent to perform a search of his car. Upon finding the pseudoephedrine pills, starter fluid (ether), granular drain opener (sodium hydroxide), lithium batteries, and isopropyl alcohol, Officer Pevey had reasonable cause to believe that McClellan had committed the felony of possessing precursors for methamphetamine. Only after being arrested and informed of his ***Miranda*** rights did McClellan make his

6

incriminating statement. Thus, the trial judge did not err in refusing to suppress his confession.

*2. Weight of the Evidence*

¶13. When reviewing a claim that the verdict was against the overwhelming weight of the evidence, the evidence is weighed in the light most favorable to the verdict. ***Bush v. State***, 895 So. 2d 836, 844 (Miss. 2005). This Court will not order a new trial unless it finds that the verdict "is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." ***Id***.

¶14. McClellan argues that the State did not prove that he had actual or constructive possession of the pseudoephedrine or the methamphetamine precursors. Although all of the materials were found in McClellan's car, he argues that the only substance within his control was the 212 dosage units of pseudoephedrine. The rubbing alcohol and ninety-six dosage units of pseudoephedrine were found in McGee's luggage, and the cans of starter fluid and granular drain opener were found in the back seat. McClellan also points out that only McGee purchased pseudoephedrine at the Dutch Village store.

¶15. To support a conviction for possession of a controlled substance, "there must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it." ***Wall v. State***, 718 So. 2d 1107, 1111 (Miss. 1998) (quoting ***Curry v. State***, 249 So. 2d 414, 416 (Miss.1971)). Moreover, "[i]t is quite possible to have joint constructive possession." ***Wall***, 718 So. 2d at 1111 (citing ***Powell v. State***, 355 So. 2d 1378, 1379 (Miss. 1978)).

7

¶16.   McClellan was the operator of the vehicle in which the contraband was found, and there was nothing to rebut the presumption that he was in constructive possession of the contents of the vehicle.  Through his confession, he admitted that he was "aware of the presence and character of the particular substance and was intentionally and consciously in possession of it." *Id*.  In his statement, he admitted to police that McGee was helping him acquire the ingredients for methamphetamine and that the two of them intended to manufacture and use the finished product.  Accordingly, we find that the verdict was not against the overwhelming weight of the evidence.

*3. Evidence of Prior Conviction*

¶17.   McClellan was convicted of burglary on July 3, 1996, and received a three-year sentence.[3] At the close of the State's presentation of the evidence, the trial judge, after finding that the probative value of admitting McClellan's prior conviction outweighed its prejudicial effect under ***Peterson v. State***, 518 So. 2d 632 (Miss. 1987),  ruled that the State could use McClellan's prior burglary conviction as impeachment evidence, pursuant to Mississippi Rules of Evidence 609(a)(1)(B), should he choose to testify on his own behalf. Following the trial court's ruling, McClellan chose not to testify.  McClellan argues on

---

[3] We can deduce from the record that McClellan's conviction occurred outside the ten-year window of Mississippi Rule of Evidence 609(b); however, there are no judicial or Department of Corrections records to substantiate defense counsel's statements that McClellan served only one year of the three-year sentence.  Thus, this Court cannot determine when McClellan was released from the confinement imposed for his burglary conviction.  However, because this aspect of Rule 609 was not argued by McClellan at trial, and is not argued on appeal, this Court will not address this issue.

appeal that the trial court's ruling was an abuse of discretion that resulted in his inability to put on a defense.

¶18. Where a criminal defendant chooses not to testify after the trial court has ruled that his or her prior convictions may be used as impeachment evidence, the defendant is procedurally barred from arguing on appeal that such a ruling prevented his putting on a defense or had a "chilling effect" on his right to testify if he fails to proffer his proposed testimony. *Heidelberg v. State*, 584 So. 2d 393, 395 (Miss. 1991). "At the very least, a defendant wishing to present the point on appeal, absent having taken the witness stand himself, must preserve for the record substantial and detailed evidence of the testimony he would have given so that we may gauge its importance to his defense." *Id*. Because McClellan failed to proffer his testimony, he is procedurally barred from arguing that the trial court's ruling which would have allowed the State to impeach him with his prior burglary conviction prevented his putting on a defense.

*4. Merger*

¶19. McClellan argues that the charge of the possession of 250 dosage units of pseudoephedrine should merge into the offense of possession of precursors, and, therefore, he should not have been charged and convicted of both offenses, as they arose from the same set of facts. In other words, McClellan argues that these two convictions amount to double jeopardy, or multiple punishments for the same conduct.

¶20. This Court follows the rule announced in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). *See also, Powell v. State*, 806 So. 2d 1069, 1074 (Miss. 2001). "[W]here the same act or transaction constitutes a violation of two distinct statutory

9

provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." ***Blockburger***, 284 U.S. at 304 (citation omitted). In addition, "[a] single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." ***Id.*** (quoting ***Morey v. Commonwealth***, 108 Mass. 433 (1871)).

¶21. However, in the present case, McClellan was indicted and tried for two separate acts: (1) possession of precursors, namely, lithium, sodium hydroxide, ether, and isopropyl alcohol; and (2) possession of more than 250 dosage units of pseudoephedrine. McClellan's contention is equivalent to arguing that one cannot be convicted of unlawful possession of marijuana and unlawful possession of cocaine simply because the defendant was found in possession of both substances at the same time. While it is true that pseudoephedrine is listed as a precursor under Mississippi Code Section 41-29-313(1)(b), the precursors which McClellan was convicted of unlawfully possessing did not include pseudoephedrine. *See* Miss. Code Ann. § 41-29-313(1)(b) (Rev. 2009). The State did not use the pseudoephedrine found in McClellan's car to support its charge for possession of precursors. *See **Hunt v. State***, 863 So. 2d 990, 993 (Miss. Ct. App. 2005) (holding that by using the same pseudoephedrine to support convictions for possession of precursors and possession of more than 250 dosage units of pseudoephedrine amounted to double jeopardy). Because the pseudoephedrine was not listed as one of the precursors, we find that McClellan was properly charged with, tried for, convicted of, and sentenced for two distinct crimes.

10

## CONCLUSION

¶22.  For the foregoing reasons, we find no reversible error, and the convictions are affirmed.

¶23.  **COUNT I: CONVICTION OF POSSESSION OF PRECURSORS AND SENTENCE AS A HABITUAL OFFENDER OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAY A FINE OF $1,000,000, AFFIRMED. COUNT II: CONVICTION OF POSSESSION OF 250 DOSAGE UNITS OF PSEUDOEPHEDRINE AND SENTENCE AS A HABITUAL OFFENDER OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAY A FINE OF $5,000, AFFIRMED.  SENTENCE IN COUNT II TO RUN CONCURRENTLY WITH THE SENTENCE IMPOSED IN COUNT I.**

   **WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH, LAMAR, CHANDLER AND PIERCE JJ., CONCUR.**